```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF WASHINGTON
```

| | |
|---|---|
| JOSH DONLEY, | ) |
| Plaintiff, | ) No. CV-10-5043-CI |
| v. | ) REPORT AND RECOMMENDATION |
| | ) FOR ORDER DENYING |
| SUSAN BRAIN, CATHY DANIEL,[1] and | ) DEFENDANTS' MOTIONS FOR |
| THOMAS COOPER, | ) 41(b) DISMISSAL AND GRANTING |
| | ) DEFENDANTS' MOTIONS FOR |
| Defendants. | ) SUMMARY JUDGMENT |

Before the court on report and recommendation are Defendants' Motions to Dismiss (ECF No. 45, 52), and Motions for Summary Judgment. (ECF No. 47, 53.) Plaintiff, a prisoner housed at Benton County Jail at the time of alleged constitutional violations, is proceeding *pro se* and *in forma pauperis*. Defendant Cathy Daniel is represented by Benton County Prosecutor Jonathan Young; Defendants Susan Brain and Thomas Cooper are represented by attorney Kenneth Miller. The parties have not consented to proceed before a magistrate judge.

---

[1] Ms. Daniel's first name is misspelled in the original and amended Complaint and is corrected in this Order. The court clerk is directed to correct the spelling in the court file; all future filings should reflect the correct spelling of Ms. Daniel's name.

REPORT AND RECOMMENDATION FOR ORDER
DENYING DEFENDANTS' MOTIONS FOR RULE 41(b) DISMISSAL
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 1

**PROCEDURAL HISTORY**

On April 7, 2010, Plaintiff filed a first Amended Complaint alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. (ECF No. 6.) On May 19, 2010, the court directed service of the amended complaint on Defendants. (ECF No. 9.) A scheduling conference was held on August 20, 2010, at which Plaintiff and counsel for Defendants appeared telephonically. (ECF No. 21.) On August 20, 2010, the court entered a Scheduling Order, which set litigation deadlines and advised Plaintiff of the court rules governing motions for dismissal/summary judgment. (ECF No. 22.)

Defendants filed Motions to Dismiss and Motions for Summary Judgment on or about January 6, 2011, (ECF No. 45, 47, 52, 53.) On February 18, 2011, the Court Clerk sent a "Notice to Pro Se Litigants of the Dismissal and/or Summary Judgment Rule Requirements" [2] to Plaintiff at the Washington State Corrections Center in Shelton, Washington. (ECF No. 92.) Plaintiff timely responded to Defendants' Motions. (ECF No. 70, 88, 90, 93.)

**FIRST AMENDED COMPLAINT**

Plaintiff claims his civil rights were violated when he was denied adequate medical attention over a period of seven months while housed at Benton County Corrections. (ECF No. 6 at 4.[3])

---

[2] *See Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998), *cert. denied*, 527 U.S. 1035 (1999).

[3] Citations to the court file reflect the court's electronic case filing document number (ECF No.) and sequential pagination of the material in each document, found at the bottom of each page.

REPORT AND RECOMMENDATION FOR ORDER
DENYING DEFENDANTS' MOTIONS FOR RULE 41(b) DISMISSAL
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 2

Specifically, he alleges Defendants Daniel, Brain, and Cooper delayed needed hospitalization and intravenous (IV) antibiotics for treatment of a knee infection involving methicillin-resistant Staphylococcus aureus (MRSA), which eventually required surgery. He claims he should have been hospitalized and treated with IV antibiotics at the time he was first seen by Nurse Brain at the jail medical facility. (ECF No. 82 at 135.) He also alleges Defendant Cooper failed to diagnose and order the proper laboratory tests. (ECF No. 6 at 6.) Plaintiff seeks monetary damages. (ECF No. 6 at 4.) Defendants answer that Plaintiff received proper medical care at the jail; hospitalization for treatment of his wound was not medically necessary; and Plaintiff waived treatment by refusing treatment against medical advice. Defendants argue Plaintiff has presented no evidence of constitutional deprivation, and all claims should be dismissed with prejudice. (ECF No. 16, 17, 51, 56.)

## UNDISPUTED MATERIAL FACTS

In support of their motions to dismiss/summary judgment, Defendant Daniel and Defendants Cooper and Brain filed Statements of Material Facts, (ECF No. 49, 57), supported by Affidavits of Cathy Daniel (ECF No. 50), Susan Brain, (ECF No. 58), and Walter Thomas Cooper (ECF No. 59.) Plaintiff timely filed an affidavit with exhibits in support of his response. (ECF No. 70.) On February 8, 2011, Plaintiff filed a Response, a Declaration, and a Statement of Disputed and Undisputed Facts in Opposition to the motions for summary judgment. Additional medical evidence from specialists and Benton County Jail was attached. (ECF No. 88, 89, 90, 93.)

---

LOCAL RULE FOR THE EASTERN DISTRICT OF WASHINGTON (LR) 10.1(e).

REPORT AND RECOMMENDATION FOR ORDER
DENYING DEFENDANTS' MOTIONS FOR RULE 41(b) DISMISSAL
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 3

Defendants replied to Plaintiff's statement of facts, and citing FED. R. CIV. P. (RULE) 56(e), objected to Plaintiff's unsworn comments in ECF No. 70. (ECF No. 80, 81, 83, 84.) In response to Plaintiff's statement of facts, Defendants also submitted portions of Plaintiff's sworn deposition, taken on December 6, 2010. (ECF No. 82, 85.) The file being developed fully and reviewed completely, the following material facts are undisputed:[4]

1. Plaintiff arrived at Benton Count Jail on July 26, 2009, and was incarcerated there at the time of the alleged violations, (ECF No. 50 at 2.)
2. Cathy Daniel is an employee of Benton County. During the relevant time, Defendant Daniel was the manager of the Benton County Jail Medical Division. In this capacity, she monitored progress in Plaintiff's medical treatment by reviewing his records and conferring with medical staff. (ECF No. 50 at 1-2.)
3. Walter Thomas Cooper, M.D., is a licensed physician in the State of Washington. At the relevant time, Defendant Cooper oversaw medical care at the Benton County Jail, and provided medical treatment for Plaintiff. (ECF No. 59.)
4. Susan Brain is an advanced registered nurse practitioner (ARNP), certified in the State of Washington. At the relevant time Defendant Brain was employed by Defendant Cooper and

---

[4] Material facts are not established by conclusory or speculative allegations and must be presented in evidentiary form. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 242, 248 (1986). Affidavits or declarations used to support or oppose a motion for summary judgment must comply with RULE 56(c)(4).

REPORT AND RECOMMENDATION FOR ORDER
DENYING DEFENDANTS' MOTIONS FOR RULE 41(b) DISMISSAL
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 4

provided health care at the Benton County Jail, including medical treatment for Plaintiff. (ECF No. 58.)

5. Plaintiff was seen by Defendant Brain on August 6, 2009, for treatment of an abscess on his left knee, which was incised and drained by Defendant Brain. (ECF No. 58 at 3; ECF No. 70 at 1; ECF No. 82 at 13.)

6. Plaintiff wanted to be hospitalized and put on IV antibiotics when he was first seen at the jail medical clinic. (ECF No. 82 at 15.)

7. Treatment for Plaintiff's localized infected abscess was available at the jail. Dr. Cooper determined hospitalization was not necessary for treatment of the wound initially because Plaintiff had no symptoms or fever to indicate his infection had spread beyond the knee. (ECF 59 at 2-3, 6-8; ECF No. 70 at 29.) After his knee wound was incised and drained, Plaintiff was isolated at the jail to prevent exposure to bacteria, facilitate wound care, and to decrease the spread of infection to other inmates. Plaintiff was seen daily for wound cleaning and dressing by medical staff; he was seen by Defendant Brain or Dr. Cooper once or twice weekly. (ECF No. 58 at 3; ECF No. 59 at 2-3.)

8. Because MRSA is the most common infection in a jail environment, oral antibiotics prescribed to treat MRSA infections are administered routinely by medical staff at Benton County Jail. Defendant Cooper and Defendant Brain presume skin infections are MRSA and reserve wound cultures for wounds that do not respond to oral antibiotics. (ECF No. 58 at

REPORT AND RECOMMENDATION FOR ORDER
DENYING DEFENDANTS' MOTIONS FOR RULE 41(b) DISMISSAL
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 5

6-7.) )

9. The wound showed improvement until September 20, 2009. Plaintiff was seen by Defendant Cooper on September 21, 2009. Oral antibiotics were prescribed by Defendant Cooper and administered by jail medical staff. Plaintiff refused to see Dr. Cooper on September 28, 2009. (ECF No. 59 at 3.)

10. Plaintiff was seen by Defendant Brain on October 6, 2009, and by Defendant Cooper on October 12, 2009, at which time a MRI was ordered. (ECF No. 58 at 3; ECF No. 59 at 3.) The MRI was ordered to determine whether the abscess had spread beyond the soft tissue of his leg prior to consultation with a specialist. (ECF No. 59 at 5.)

11. Plaintiff refused to go in for the MRI as scheduled on October 15, 2009, stating he did not want to go to the hospital in prison garb. On October 21 and 22, 2009, he refused to take a shower, have his dressing changed, and take his oral antibiotics because he said they upset his stomach. Wound care continued while Plaintiff refused the MRI; anti-nausea medicine was given and the oral antibiotic prescription was changed. (ECF No. 58 at 4-5; ECF No. 59 at 4-5.)

12. Plaintiff agreed to go for a MRI, which was scheduled for November 16, 2009. (ECF No. 59 at 4.) Imaging showed osteomyelitis (chronic bone infection) with surrounding edema and no suggestion of abscess. (ECF No. 70 at 29.)

13. Initial treatment for osteomyelitis is IV antibiotics; surgery is reserved for cases that do not respond to IV antibiotics. (ECF No. 59 at 5.)
REPORT AND RECOMMENDATION FOR ORDER
DENYING DEFENDANTS' MOTIONS FOR RULE 41(b) DISMISSAL
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 6

14. Plaintiff was referred immediately to an orthopedic specialist. Within 48 hours of review of the MRI results by the orthopedic specialist, an appointment with an orthopedic surgeon was made for December 1, 2009. (ECF No. 58 at 5; ECF No. 59 at 5.)

15. At the request of the orthopedic surgeon, Plaintiff was seen by an infectious disease specialist on December 15, 2009. The infectious disease specialist ordered six weeks treatment with IV antibiotics, which was administered at the jail. (ECF No. 58 at 6.)

16. Defendants Brain and Cooper actively oversaw Plaintiff's medical treatment at the jail and discussed his care with the infectious disease specialist. (ECF No. 58 at 6; ECF No. 59 at 6.)

17. Surgery became necessary when Plaintiff's infection did not respond to wound care and a prolonged course of antibiotics. (*Id.*)

18. After consultation with his orthopedic specialist, Plaintiff was hospitalized for debridement of his left knee bone on March 9, 2010. (ECF No. 70 at 3, 12, 35; ECF No. 59 at 6.)

19. The care Plaintiff received from Defendants Brain and Cooper and the medical staff at the Benton County Jail was within the standard of care generally accepted within the medical profession.[5] (ECF No. 58 at 8; ECF No. 59 at 7.)

---

[5] Plaintiff's statement that medical care given by Defendants Brain and Cooper "below the standards of the community," is unsupported by sworn affidavit or verified declaration of a qualified medical professional, as required by RULE 56(c)(4). (ECF

20. At no time did it appear to Defendant Daniel that delay in treatment was due to medical staff failure to provide appropriate care. (ECF No. 50 at 3.)

21. At no time did Defendants Daniel, Cooper, and Brain intend to deprive Plaintiff of needed medical care or delay his treatment. (ECF No. 50 at 3; ECF No. 58 at 8; ECF No. 59 at 7.)

## DISMISSAL UNDER RULE 41(b)

Defendants first move for dismissal with prejudice under RULE 41(b) for failure to timely file and serve lay and expert witness lists as ordered by the court in its scheduling order. (ECF No. 45, 52.) It is within the court's discretion to dismiss a case under RULE 41(b). "Dismissal is a harsh penalty and is to be imposed only in extreme circumstances." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). To dismiss a case as a sanction for non-compliance with a court order, the court must weight five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants;(4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Youris v. California Amplifier*, 191 F.3d 983, 990-92

---

No. 70 at 4.) This conclusory assertion is insufficient to raise a genuine issue of material fact regarding the standard of care. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990); *Hutchinson v. United States*, 838 F.2d 390, 393 (9th Cir. 1988)(plaintiff cannot rest on the pleadings to show a genuine issue for trial).

REPORT AND RECOMMENDATION FOR ORDER
DENYING DEFENDANTS' MOTIONS FOR RULE 41(b) DISMISSAL
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 8

(9th Cir. 1999)(*quoting Henderson, supra*).

Here, expeditious resolution of litigation is not a compelling factor. The case, which is before the undersigned on report and recommendation, is not yet set for trial. Plaintiff's failure to file and serve witness lists at this juncture is not impeding the court in its docket management. Further, Defendants have not identified a risk of prejudice due to Plaintiff's non-compliance that warrants the harsh sanction of dismissal. Finally, public policy strongly favors the disposition of cases on the merits, and less drastic, progressive means to enforce compliance have not been attempted. *Id.; see also In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, (9th Cir. 2006)(non-compliance with court's case management order not prejudicial to public's interest, court, or defendants). Accordingly, **IT IS RECOMMENDED** Defendants' Motions to Dismiss (**ECF. No. 45, 52**) be **DENIED**.

## SUMMARY JUDGMENT

In the alternative to dismissal, Defendants move for summary judgment and dismissal of all claims with prejudice. (ECF No. 47, 53.) A party is entitled to summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RULE 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party has carried the burden under RULE 56, the party opposing the motion must do more than simply show there is "some metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986).

The party opposing the motion must present facts in evidentiary form and cannot rest merely on the pleadings. *Anderson*, 477 U.S. at 248. Genuine issues are not raised by mere conclusory or speculative allegations. *Lujan,* 497 U.S. at 888. The court will examine the direct and circumstantial proof offered by the non-moving party and permissible inferences which may be drawn from such evidence. A party cannot defeat a summary judgment motion by drawing strength from the weakness of the other party's argument or by showing "that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987); *see also, Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216 (9th Cir. 1995).

Finally, the Supreme Court has ruled that RULE 56 requires entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. The question on summary judgment, then, is "whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52. Where there is no evidence on which a jury could reasonably find for the non-moving party, summary judgment is appropriate. *Id.* at 252.

**42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the deprivation was committed by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(*overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)); *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). To hold a defendant liable for damages, the wrongdoer must personally cause the violation. *Leer*, 844 F.2d at 633. There is no *respondeat superior* liability. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Thus, a supervisor is liable under § 1983 only if he/she "participated in or directed the violation, or knew of the violation and failed to prevent it." *Id*.

If damages are sought, sweeping conclusory allegations against a prison official will not suffice; an inmate must set forth specific facts as to each individual defendant's participation. *Leer*, 844 F.2d at 634. Here, there is no issue to whether Defendants were acting under color of state law; the only question is whether Defendants' acts were unconstitutional.

**EIGHTH AMENDMENT VIOLATION - MEDICAL MISTREATMENT**

To establish a constitutional violation under the Eighth Amendment due to inadequate medical care, Plaintiff must show "deliberate indifference" by prison officials to a "serious medical

need." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). For an inmate to state a claim under § 1983 for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle*, 429 U.S. at 106. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an 8th Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9. Here, it is undisputed that Plaintiff's left knee wound constituted a "serious medical need." (ECF No. 56 at 7.)

Once a serious medical need is shown, the inmate must show the defendant's response to the medical need was "deliberately indifferent." *Estelle*, 429 U.S. at 104. Deliberate indifference to a prisoner's medical needs is defined by the Court as the "unnecessary and wanton infliction of pain." *Id.* Indifference proscribed by the Eighth Amendment may be manifested by a prison doctor's response to the prisoner's need, by the intentional denying or delaying access to medical care, or the intentional interference with treatment once prescribed. *Id*. However, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

The court applies an objective test and a subjective test in assessing claims of deliberate indifference. *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Under the objective test, the plaintiff must show the claimed deliberate indifference of medical personnel is "incompatible with the evolving standards of decency." *Estelle,*

429 U.S. at 103. In prison condition cases such as this, the subjective test requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment.'" *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)(*quoting Wilson v. Seiter*, 501 U.S. 294, 299 (1991). To satisfy the subjective test, thus, an inmate must establish that prison officials acted "recklessly" by exhibiting "a conscious disregard to a substantial risk of serious harm," given the context of the alleged violation and the constraints facing the officials. *Id*. If one of these components is not established, the court need not inquire as to the existence of the other. *Helling*, 509 U.S. at 35.

### *Objective Component*

To establish a constitutional violation under the Eighth Amendment, medical indifference to an inmate's medical condition must be substantial, rising to the level of "unnecessary and wanton infliction of pain." *Estelle,* 429 U.S. at 104. "A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id*. at 105. Inadequate treatment due to negligence, inadvertence or differences in judgment between an inmate and prison officials does not rise to the level of a constitutional violation. *Hutchinson*, 838 F.2d at 392, 394. Thus, an inadvertent or arguably negligent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain." *Estelle,* 429 U.S. 105. As held by the Court, "An accident, although it may produce added anguish, is not on that

REPORT AND RECOMMENDATION FOR ORDER
DENYING DEFENDANTS' MOTIONS FOR RULE 41(b) DISMISSAL
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 13

basis alone to be characterized as wanton infliction of unnecessary pain." *Id.*

Even if prison officials knew of a substantial risk to an inmate's health, they may not be found liable if they responded reasonably to the risk, even if the harm was not averted. *Farmer*, 511 U.S. at 844-45. Further, an isolated incident of arguable neglect does not constitute deliberate indifference to serious medical needs. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2004).

Viewing the evidence presented in a light most favorable to Plaintiff, uncontroverted facts establish that medical treatment given at the jail by Dr. Cooper, Nurse Brain and Captain Daniel in response to Plaintiff's medical need was reasonable and did not "violate contemporary standards of decency." *Helling*, 509 U.S. at 35. It is undisputed that when Plaintiff first reported to the jail clinic in August 2009, Dr. Cooper determined Plaintiff's wound was localized, there was no evidence of fever to indicate infection, and hospitalization was not medically necessary at that time. (ECF No. 59 at 3, 6-7.) Plaintiff was isolated at the jail to prevent further infection, his wound was cleaned, treated, and dressed twice daily, and he was seen one or two times per week by licensed medical professionals (Dr. Cooper or Nurse Brain). (ECF No. 58; ECF No. 59.)

Plaintiff does not controvert the fact that Defendants ignored or delayed treating his left knee wound. Rather, Plaintiff argues Defendants' failure to hospitalize him at his initial visit to the jail clinic constitutes deliberate indifference. However, a

difference in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

It is also undisputed that Plaintiff's wound showed improvement until medical staff noticed it appeared worse on September 20, 2009. (ECF No. 58 at 3; ECF No. 59 at 3.) On September 21, 2009, Dr. Cooper saw Plaintiff, prescribed oral antibiotics used to treat MRSA infections and ordered a MRI immediately to determine why the wound was not healing. (ECF No. 59 at 5.) Plaintiff refused to go to the scheduled MRI for reasons unrelated to treatment. (ECF No. 58 at 4.) Defendants continued medical treatment at the jail in the form of routine wound cleaning and dressing and oral antibiotics. Plaintiff agreed to go for the MRI on November 16, 2009. The results indicated osteomyelitis, and Defendants referred him to an orthopedic specialist and an infectious disease specialist. On December 15, 2009, Plaintiff saw the infectious disease specialist, who ordered IV treatment with antibiotics. (ECF No. 59 at 6.) This treatment was administered at the jail. (ECF No. 58 at 6.)

When the infection did not respond to prolonged antibiotic treatment, the orthopedic surgeon consulted with Plaintiff and recommended surgery to remove dead or infected tissue at the wound site which was impeding healing. (ECF No. 70 at 35.) Surgery was performed on March 9, 2010, at the hospital, and Plaintiff received post-operative treatment at the jail. (ECF No. 70 at 36; ECF No. 90 at 60-80.) Benton County Jail nurses notes show Plaintiff was reporting for wound care and receiving IV antibiotics at the jail

REPORT AND RECOMMENDATION FOR ORDER
DENYING DEFENDANTS' MOTIONS FOR RULE 41(b) DISMISSAL
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 15

through April 22, 2010. (ECF No. 90 at 80.)

Without identifying which fact he is disputing, and without citing to evidence in the record to support his argument, Plaintiff alleges Defendants failed to get him back to the hospital for "month or so," did not follow prescribed treatment, and failed "to let my provider know of my situation as prescribed." (ECF No. 70 at 5.) He claims this delay "upset" his doctor, and reflects deliberate indifference to his medical need. (ECF No. 90 at 2.) He also claims Defendant Cooper failed to order lab tests. (ECF No. 6 at 6.) These assertions do not raise a genuine issue of material fact. *See Estelle*, 429 U.S. at 107 (prison doctor's decision not to order x-rays "does not represent cruel and unusual punishment").

Pursuant to RULE 56(c)(3),[6] despite Plaintiff's failure to support his assertions by citing to materials in the record, the court has considered all materials submitted by Plaintiff. According to Benton County Corrections nurses notes, IV treatment began at the jail no later than December 18, 2009, three days after Plaintiff saw the infectious disease specialist. (ECF No. 90 at 61.) There was a five-week delay in re-starting IV treatment in the jail after Plaintiff removed the PICC line himself, and IV treatment was discontinued until follow-up with the specialist. (ECF No. 70

---

[6] In summary judgment proceedings, Plaintiff must support his assertion of deliberate indifference with cites to the record that show or create inferences that Defendants intentionally delayed medical treatment in an effort to harm him. RULE 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." RULE 56(c)(3).

REPORT AND RECOMMENDATION FOR ORDER
DENYING DEFENDANTS' MOTIONS FOR RULE 41(b) DISMISSAL
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 16

at 14; ECF No. 90 at 67.)   Although the infectious disease specialist reported frustration with the delay by the jail, this isolated incident does not rise to the level of a constitutional violation. *Jett*, 439 F.3d at 1096; *see also Hutchinson,* 838 F.2d at 392, 394.  The sworn affidavits, evidence submitted by both parties, and inferences drawn from this evidence, demonstrates medical treatment provided by Defendants does not implicate the constitutional right against cruel and unusual punishment.   The overall care given by Defendants militates against finding of the "unnecessary and wanton infliction of pain," based on one instance of delay.  *Jett*, 439 F.3d at 1096.   Plaintiff has failed to establish the objective component of deliberate indifference. *See Hudson*, 503 U.S. at 9. [7]

***Subjective Component***

To establish the subjective component of deliberate indifference for Eighth Amendment liability, Plaintiff must demonstrate that Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.   Eighth Amendment liability requires "more than ordinary lack of due care for the

---

[7] It may be that Plaintiff's allegations rise to the level of negligence, medical malpractice, or other state law claim. However, materials submitted by Plaintiff, as well as Plaintiff's deposition testimony, evidence instances in which Plaintiff refused medication, imaging tests, and wound dressing, and removed his own intravenous line during IV antibiotic treatment, actions which delayed his own treatment and recovery. (ECF No. 70 at 14; ECF 82 at 9-11; ECF No. 90 at 67, 77, 79.)

REPORT AND RECOMMENDATION FOR ORDER
DENYING DEFENDANTS' MOTIONS FOR RULE 41(b) DISMISSAL
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 17

prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[S]ome mental element must be attributed to the inflicting officer before it can qualify [as deliberate indifference to a serious medical need]." *See Wilson*, 501 U.S. at 300.

In medical mistreatment cases, the subjective state of mind requirement is somewhere between negligence and acts "for the very purpose of causing harm." *Farmer*, 511 U.S. at 835-36. As further explained by the Court, to establish the subjective component, an inmate must demonstrate that jail officials were (1) aware of a substantial risk of harm and (2) purposely disregarded the risk to the inmate's health. *Id.* at 837-38. An inmate's belief that prison officials actions were purposely harmful is insufficient to establish a culpable state of mind; mere speculation is insufficient to raise a material issue of fact. *See Lujan,* 497 U.S. at 888.

Here, Defendants Daniel, Brain and Cooper aver under oath that they did not intend to harm Plaintiff during his course of medical treatment at Benton County Jail. (ECF No. 50 at 3; ECF No. 58 at 8; ECF No. 59 at 7.) Further, medical records submitted by Plaintiff do not support an inference that Defendants acted in knowing disregard to substantial medical risks, or were intent on inflicting pain as punishment. Plaintiff, thus, fails to create an issue of material fact necessary to meet the standard for Eighth Amendment liability.

**CONCLUSION**

Viewing the evidence in a light most favorable to Plaintiff, Defendants have established by uncontroverted evidence that Plaintiff's medical needs were met with medical treatment that does not offend the evolving standards of decency. Plaintiff fails to

REPORT AND RECOMMENDATION FOR ORDER
DENYING DEFENDANTS' MOTIONS FOR RULE 41(b) DISMISSAL
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 18

establish the essential element of deliberate indifference required to defeat summary judgment. No material issue of fact is raised by Plaintiff's affidavits or materials presented in opposition of Defendants motions; therefore, summary judgment for the Defendants is warranted as a matter of law. Because summary judgment for Defendants is warranted, the issue of qualified immunity is not addressed. Accordingly,

**IT IS RECOMMENDED:**

1. Defendants' Motions for Dismissal (**ECF No. 45, 52**) be **DENIED**;
2. Defendants' Motions for Summary Judgment (**ECF No. 47, 53**) be **GRANTED** and all claims against Defendants **BE DISMISSED WITH PREJUDICE.**

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection. Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a de novo determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination

thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), RULE 72(b)(3); LMR 4, LOCAL RULES FOR THE EASTERN DISTRICT OF WASHINGTON.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to file this Report and Recommendation and provide copies to Plaintiff and counsel for Defendants and Judge Edward Shea.

DATED June 10, 2011.

                          S/ CYNTHIA IMBROGNO
                  UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION FOR ORDER
DENYING DEFENDANTS' MOTIONS FOR RULE 41(b) DISMISSAL
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 20